IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>   v.<br><br>CHARLES J. WEISS,<br><br>               Defendant. | CIVIL ACTION<br>NO. 19-502 |

**OPINION**

**Slomsky, J.**                                                                                               **May 21, 2020**

## I.    INTRODUCTION

On February 5, 2019, the United States brought this suit against Defendant Charles J. Weiss, seeking to recover unpaid federal income taxes plus statutory additions, totaling $773,899.84. On October 15, 2019, Defendant filed a Motion for Summary Judgment arguing that the Government's claim is barred because the statute of limitations expired before the Government filed suit. On November 15, 2019, the Government filed a Cross-Motion for Partial Summary Judgment asserting that the statute of limitations had not expired. For reasons that follow, the Court finds that the limitations period did not expire and therefore the Government filed this action timely. Thus, Defendant's Motion for Summary Judgment will be denied, and the Government's Cross-Motion for Partial Summary Judgment will be granted.

## II.    BACKGROUND

Defendant Charles J. Weiss[1] ("Defendant" or "Weiss") did not pay his income taxes for the years of 1986 through 1991. (See Doc. No. 14 at 2-3.) To date, Weiss has not paid because of

---

[1] Weiss resides in Montgomery County, Pennsylvania, which is in the Eastern District of Pennsylvania. (See Doc. No. 14 at 2.)

bankruptcy filings and legal challenges in other forums. In his Motion for Summary Judgment, he again attempts to block the Government's collection of his taxes. But to better understand the reasons for the delay from 1991 to the present in the collection of Weiss's taxes, a description of the events over the years is first warranted.

On October 10, 1994, Weiss late-filed his income tax returns for those years, self-reporting a liability of $299,202. (See id. at 2-6.) Later that month, the Government made tax assessments against him based on his admitted liability. (Id.) When the Government made its assessments, it triggered a statute of limitations to collect the unpaid taxes under 26 U.S.C. § 6502(a)(1), which states in part as follows:

> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun … within 10 years after the assessment of the tax.

Under Section 6502(a)(1), the statute of limitations would have expired in October 2004. (See Doc. No. 1.) This statute can be tolled, however, by certain actions of a taxpayer, including the filing of a bankruptcy petition. 26 U.S.C. § 6503(h). In Weiss's case, the statute of limitations was tolled when he filed for bankruptcy three times between 1994 and 2009. (See Doc. No. 19 at 4; Doc. No. 14 at 7.)

Finally, on February 11, 2009, the Government informed Weiss in a Collection Due Process ("CDP") Notice of its intent to collect his past due taxes by levy.[2] (See Doc. No. 14 at 7.) The CDP Notice was mailed to him. (See id.) Once he received the Notice, Weiss was permitted to challenge the proposed levy. On either March 13 or March 14, 2009, Weiss mailed IRS Form

---

[2] Under 26 U.S.C. §§ 6331(a)-(b), if a taxpayer still does not pay after notice and demand, the IRS may collect such tax "by levy upon all property and rights to property," where the "levy" is a collection method that "includes the power of distraint and seizure by any means."

12153 to request a CDP hearing for tax years 1986 through 1991. (See Doc. No. 14 at 7.) The hearing is conducted by IRS Appeals. The parties in this case now stipulate that the limitations period was tolled from the date Weiss mailed this form,[3] leaving either 129 or 130 days remaining on the statute of limitations for collection.[4] (See id. at 8.) The Government was prohibited from executing on the levy until Weiss's challenge was resolved.[5]

On January 22, 2010, IRS Appeals conducted a hearing over the telephone, during which Weiss fashioned an argument—one that he is not asserting in the instant action—that the statute of limitations had expired on July 21, 2009. (See Doc. No. 19-2.) On this date the limitations period would have expired based on tolling due to his bankruptcy filings. (See id. at 3.) He also posited another argument that the statute of limitations had expired because he returned his CDP form late. (See id. at 6.) IRS Appeals rejected his claims. (See id.) On June 8, 2011, Weiss filed a petition to the United States Tax Court for review of the decision by IRS Appeals. (See id.) On August 22, 2016, the Tax Court affirmed the ruling of IRS Appeals. (See id.)

On November 23, 2016, Defendant appealed the Tax Court's decision to the United States Court of Appeals for the District of Columbia Circuit. (See Doc. No. 14 at 8.) On May 22, 2018, that court affirmed the Tax Court decision, agreeing that the statute of limitations had not expired.

---

[3] 26 C.F.R. § 301.6330-1(g) states "[t]he periods of limitation under section 6502 . . . are suspended until the date the IRS receives the taxpayer's written withdrawal of the request for a CDP hearing by Appeals or the determination resulting from the CDP hearing becomes final by expiration of the time for seeking judicial review or the exhaustion of any rights to appeals following judicial review."

[4] Whether 129 or 130 days remained on the collection period is not significant to the outcome in this case.

[5] Under 26 U.S.C. § 6330(e)(1), "if a [CDP] hearing is requested . . . the levy actions which are the subject of the requested hearing . . . shall be suspended[.]"

(See id. at 9.)  On July 27, 2018, a petition for rehearing en banc was denied.  (See id.)  Neither the Government nor Weiss filed a motion to stay the issuance of the mandate under Fed. R. App. P. 41(d)(2) in the Court of Appeals.  (See id.)  On August 23, 2018, the D.C. Circuit awarded costs to the United States and issued its mandate.  (See id.)  And on September 24, 2018, the Department of Justice sent a letter to Weiss's counsel demanding payment for costs in the amount of $59.92.  (See id. at 10.)  On October 9, 2018, Weiss's counsel paid the costs by check.  (See id.)

On October 24, 2018, Weiss filed a petition for a writ of certiorari to the United States Supreme Court, seeking review of the D.C. Circuit's ruling.  (See Doc. No. 14 at 10.)  On December 3, 2018, the petition for a writ of certiorari was denied.  (See id.)

On February 5, 2019—64 days after the Supreme Court denied the petition for writ of certiorari—the Government brought the present action against Weiss to reduce to judgment[6] his unpaid assessments plus statutory additions for the years 1986 through 1991, which now totaled $773,899.84.[7]  (See Doc. No. 1.)  According to the Government, at the time it filed the instant action, either 65 or 66 days remained before the expiration of the statute of limitations.  After executing a waiver of service and receiving an extension of time to respond, Defendant filed his Answer to the Complaint on May 24, 2019.  (See Doc. No. 7.)  In his Answer, Weiss raised several

---

[6]  The Government will seek to reduce tax claims to judgment "if the collection statute will shortly expire, all administrative remedies have been exhausted, and there is a reason to believe that collection can be effected in the future . . . ." I.R.S. Chief Couns. Directive Manual (CCDM) 34.6.2.1 (June 12, 2012).  The purpose of reducing a tax claim to judgment is to ensure that the liability remains enforceable and the period for collection by levy is extended.  See id.

[7]  According to the Government, aside from a series of payments in 2009 totaling $14,000 and a transfer credit of $5,956 for overpayment of his 2003 income taxes, Weiss has not made any further payments toward the 1986 through 1991 tax assessments.  (See Doc. No. 19 at 3.)

defenses,[8] including the argument that the statute of limitations had expired prior to the filing of the Government's suit. (See id.)

On September 12, 2019, both parties filed a Stipulation setting forth Weiss's self-reported liability for each relevant tax year. (Doc. No. 14.) Additionally, the Stipulation recounted both the dates and results of the proceedings in the United States Tax Court, the D.C. Circuit Court of Appeals, and the United States Supreme Court. (See id.)

On October 15, 2019, Defendant filed the Motion for Summary Judgment (Doc. No. 17). In his Motion, Weiss claims that the ten-year statute of limitations for the Government to collect his past-due tax liability had expired before the Government brought the instant suit on February 5, 2019. (See id.) According to Defendant, the collection statute of limitations began to run again, at the latest, after the D.C. Circuit issued its mandate on August 23, 2018. Thus, with only 129 or 130 days remaining in the limitations period, he contends that the Government's ability to collect ended on either December 30, 2018 or December 31, 2018. Sensing that the Government would argue that his petition for a writ of certiorari, which was filed on October 24, 2018, continued to toll the statute of limitations, Defendant asserts that a petition for a writ of certiorari to the Supreme Court does not constitute an "appeal," which would toll the statute of limitations under the pertinent statute. (See id.)

On November 15, 2019, the Government filed a Cross-Motion for Partial Summary Judgment. (Doc. No. 19.) The Government challenged Weiss's assertions in two ways. First, it argues that a petition for a writ of certiorari is, in fact, an "appeal" under 6330(e)(1)—the tolling statute—thus suspending the collections period until the petition was denied. Second, the

---

[8] Weiss also argues that all penalties, if any, were discharged in bankruptcy, certain payments and offsets may not have been credited against the amounts claimed by the Government, and there is no basis for an award of legal fees and costs to the Government. (See Doc. No. 7 at 3.)

Government asserts that even absent tolling under the definition of "appeal," their suit was still timely because 6330(e)(1) has a "failsafe" provision that permits the Government to pursue collections within 90 days of a "final determination" of the taxpayer's hearing.  (See id.)

On January 14, 2020, this Court held a hearing on the parties' Motions, during which the parties recited their respective positions.  (See Doc. Nos. 29, 30.)

### III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case."  Favata, 511 F. App'x at 158.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Anderson, 477 U.S. at 250.  Here, the material facts are undisputed.  Therefore, the matter is ripe for summary judgment.

"The same standards and burdens apply on cross-motions for summary judgment."  Allah v. Ricci, 12-4095, 2013 WL 3816043 (3d Cir. July 24, 2013) (citing Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir.1987)).  When the parties have filed cross-motions for summary judgment, as in this case, the summary judgment standard remains the same.  Transguard Ins. Co.

6

of Am., Inc. v. Hinchey, 464 F.Supp.2d 425, 430 (M.D.Pa.2006). "When confronted with cross-motions for summary judgment. . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" Id. (quoting Marciniak v. Prudential Fin. Ins. Co. of Am., 184 F. App'x 266, 270 (3d Cir.2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." Id. (citing Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir.1998)).

## IV.   DISCUSSION

As noted above, the summary judgment motions turn on the resolution of two issues: first, whether a petition for certiorari is an "appeal" under 26 U.S.C. § 6330(e)(1), and second, whether the "failsafe" provision in that section permits the Government to pursue collection within 90 days of the denial of the writ of certiorari.

As noted above, Section 6502(a)(1) establishes a ten-year statute of limitations for collection actions. Section 6330(e)(1) suspends the limitations period in certain situations. It provides in relevant part as follows:

> [I]f a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502. . . shall be suspended for the period during which such hearing, and appeals therein, are pending. In no event shall any such period expire before the 90th day after the day on which there is a final determination in such hearing.

Section 6330(e)(1) provides two methods for tolling the collections statute. First, Section 6330(e)(1) suspends the collection statute "for the period during which such hearing, and appeals therein, are pending." Second, it also provides for a 90-day "failsafe" period, wherein the statute of limitations cannot expire "before the 90th day after the day on which there is a final determination in such hearing."

7

### A. A Petition for Certiorari to the United States Supreme Court is an "Appeal" under 26 U.S.C. § 6330(e)(1).

As noted, under Section 6330(e)(1), the statute of limitations is tolled for the period during which such hearing, and appeals therein, are pending. Both parties agree that the ordinary meaning of the word "appeals" will govern. However, the Government and Weiss disagree on what the ordinary meaning is and whether the ordinary meaning includes a petition for a writ of certiorari.

The phrase "appeals therein" is not defined in the Internal Revenue Code. Therefore, to clarify its meaning within Section 6330(e)(1), basic principles of statutory construction apply. "[A] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979).

The word "appeal" is defined in Merriam-Webster as "a legal proceeding by which a case is brought before a higher court for review of the decision of a lower court." Appeal, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/appeal (last visited April 20, 2020). The Cambridge Dictionary defines "appeal" as a "request made to a court of law or to someone in authority to change a previous decision." Appeal, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/appeal (last visited April 20, 2020). Black's Law Dictionary defines the noun "appeal" as "a proceeding undertaken to have a decision reconsidered by a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal". Appeal, BLACK'S LAW DICTIONARY (11th ed. 2019).

The word "certiorari" fits within the broader common definition of "appeal." Black's Law Dictionary defines "certiorari" as a writ "issued by an appellate court, at its discretion, directing a lower court to deliver the record in the case for review." Certiorari, BLACK'S LAW DICTIONARY

(11th ed. 2019). It is used "today in the United States as a general vehicle of discretionary appeal." DANIEL R. COQUILLETTE, THE ANGLO-AMERICAN LEGAL HERITAGE 248 (1999). Scholars have noted that, while a petition for a writ of certiorari plays a specific role within the appellate process, it is an "appeal" nonetheless. See, e.g., CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 4004, at 22 (2d ed. 1996).[9] Therefore, despite its discretionary nature, a petition for a writ of certiorari to the United States Supreme Court is included within the definition of the word "appeal."

Courts have included a petition for a writ of certiorari within the ordinary meaning of the word "appeal." A federal district court found that a petition for a writ of certiorari constituted an "appeal" when the word was undefined in a surety bond. See WesternGeco LLC v. ION Geophysical Corp., No. 4:09-CV-1827, 2016 WL 2344347, at *1 (S.D. Tex. May 4, 2016). In addition to consulting 28 U.S.C. § 2101(c), the statute setting the filing period for both an "appeal" and a "writ of certiorari," the district court noted that "in common usage the word 'appeal' is often meant to include appeal to the Supreme Court through a petition for writ of certiorari." Id. at *8. Thus, even after considering that some statutes specifically refer to both an "appeal" and a "writ of certiorari," the court still concluded that the meaning of the word "appeal" on its own "includes appeals to the Supreme Court on writ of certiorari." Id.

The Government notes several other cases displaying a general consensus among federal courts that a petition for a writ of certiorari falls within the ordinary definition of "appeal." Two cases deal directly with whether a petition for a writ of certiorari is an "appeal." In both, the courts

---

[9] "Appeal jurisdiction has been narrowly limited, and certification of questions from federal courts of appeals has fallen into almost complete desuetude. Certiorari control over the cases that come before the Court enables the Court to define its own institutional role." CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 4004, at 22 (2d ed. 1996) (emphasis added).

determined that a petition for a writ of certiorari fell within the ordinary meaning of the word "appeal." See, e.g., Matter of Petition for Disbarment of Plaskett, 2012 WL 850599, at *3 (V.I. Mar. 13, 2012) (holding that "proceedings that satisfy the ordinary definition of 'appeal' were [defendant's] direct appeal to the Third Circuit and the certiorari proceedings in the United States Supreme Court"); Fenstermacher v. Telelect, Inc., 1994 WL 675491, at *1 (D. Kan. Nov. 18, 1994) (rejecting a "strained interpretation" of local rule that referenced an "appeal" to not include "certiorari review by the [United States Supreme Court]").

Furthermore, in a case decided in the Eastern District of Pennsylvania, the court referred to a petition for a writ of certiorari as being part of an "appeal." In Thompson v. Kramer, a plaintiff sought declaratory and injunctive relief. 1994 WL 702927, at *1 (E.D. Pa. Dec. 13, 1994). In denying these requests, the court noted that "the appellate process established by Congress, which includes the right to petition for a writ of certiorari in order to appeal decisions of the Court of Appeals for the Third Circuit" rebutted the plaintiff's argument of an inadequate remedy at law. Id. at *5. From these cases, it is evident that a petition for a writ of certiorari to the United States Supreme Court falls under the rubric "appeals therein" in Section 6330(e)(1).[10]

To overcome the considerable law that the word "appeal" includes the filing of a petition for a writ of certiorari, Weiss claims that the language of the statute must be given its "ordinary

---

[10] There are cases discussing provisions of the Internal Revenue Code in which courts simply assume that a petition for a writ of certiorari is part of an "appeal." See, e.g., Boulware v. Comm'r, 107 T.C.M. (CCH) 1419 (Tax Ct. 2014) (holding in collection action that pendency of an "appeal, which would first go to the Court of Appeals for the Ninth Circuit and then most likely to the U.S. Supreme Court" could last over two years); Overton v. United States, 202 F.3d 282 at *3 (10th Cir. Jan 7, 2000) (unpub.) (disagreeing with plaintiff's assertion "he had an appeal pending in the Supreme Court when the Tax Court issued its 1996 decision" because he had not "directed [court's] attention to evidence of this appeal"); Gass v. U.S. Dep't of Treasury, 1999 WL 250890, at *6 (D. Colo. Mar. 30, 1999) (noting in collection action that assessments and the filing of liens and levies continued against plaintiffs property "despite the pendency of plaintiffs' Supreme Court appeal").

meaning . . . at the time Congress enacted the statute." (Doc. No. 17 at 13) (citing Wisconsin Cent. Ltd. v. United States, 138 S. Ct. 2067, 2070 (2018)).  Here, the language in 26 U.S.C. § 6330 was drafted in 1998.  See Pub.L. 105-206, Title III, § 3401(b), 112 Stat. 747 (1998).  As noted, 6330(e)(1) uses the phrase "appeals therein."  When that section was enacted, a party was ordinarily required to file a petition for a writ of certiorari to obtain review in the United States Supreme Court.  It was part of the appellate process in that court.  Thus, based upon the analysis above on the common meaning of the word "appeal," certiorari review in the Supreme Court would be included in the phrase "appeals therein."  Moreover, the word "appeals" in Section 6330(e)(1) is used in the plural, signifying more than one level of appellate review.  This usage lends additional support that certiorari review was included in the appeals process.  Although a petition for a writ of certiorari to the United States Supreme Court involves discretionary review, as opposed to mandatory review, this distinction does not change the fact that a petition for a writ of certiorari is part of that process.

      Weiss further argues that if Congress meant to include permissive appeals within the words "appeals therein," it would have not used the broad language "appeals therein," but in fact would have used the language "permissive appeals" or specifically mentioned a petition for a writ of certiorari.  But according to the statutory interpretation principle that "general terms are to be given their general meaning," or generalia verba sunt generaliter intelligenda, the generic phrase "appeals therein" does not distinguish between discretionary and mandatory appeals as of right and would include both.  See Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 130 (2005) (citing Uravic v. F. Jarka Co., 282 U.S. 234, 240 (1931)); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 101 (2012).  Accordingly, Weiss's interpretation of the statute is unconvincing.

**B.  The Government Brought Suit Within the "Failsafe" 90-Day Period Following a "Final Determination" Under Section 6330(e)(1).**

As noted earlier, the collections statute of limitations also is tolled by the "failsafe" 90-day period outlined in Section 6330(e)(1). Under that provision, the Government is empowered to bring its action against Weiss following a "final determination of [the CDP hearing]," which in this case is within ninety days after the Supreme Court's denied certiorari.

The word "hearing" covers what Weiss originally sought. Section 6330(e)(1) states that the section refers to "hearing[s] . . . requested under subsection (a)(3)(B)[.]" 26 U.S.C. § 6330(e)(1). Hearings requested under that subsection are Collection Due Process ("CDP") hearings. See Hart v. IRS, No. 00-4658, 2001 U.S. Dist. LEXIS 3288, at *3 (E.D.Pa. Feb. 8, 2001) (explaining that the defendant requested a collection due process hearing pursuant to 26 U.S.C. § 6330(a)(3)(B)). Weiss originated his challenge to the collection of his taxes by requesting a CDP hearing. (See Doc. No. 17 at 2-3.)

Moreover, a provision in the Code of Federal Regulations provides guidance on when there is a "final determination" in the CDP hearing. This treasury regulation found in 26 C.F.R. § 301.6330-1(g) provides that "the determination resulting from the hearing becomes final by expiration of the time for seeking judicial review or the exhaustion of any rights to appeals following judicial review." In interpreting this regulation, a federal court has confirmed that 26 C.F.R. § 301.6330-1(g) is a permissible construction of 6330(e)(1). In United States v. Kollman, 774 F.3d 592, 598 (9th Cir. 2014), the court found that the guidance in the regulation that the collections period is tolled until the expiration of the time to file an appeal was what Congress intended "when it incorporated nearly identical language into § 6330(e)(1)." Therefore, the court held that § 301.6330-1(g) is conclusive guidance for interpreting 6330(e)(1). See id. at 597-98. Following the regulation's definition of when a hearing becomes "final," the denial of Weiss's

…petition for certiorari was the "final determination" of his CDP hearing because it marked the point at which Weiss had fully exhausted the right to appeal its outcome.

In addition, another section of the Internal Revenue Code confirms that the denial of Weiss's petition for certiorari was the "final determination" of his hearing. Section 7481(a) of the I.R.C. states that the decision of the Tax Court shall become final "[u]pon the denial of a petition for a writ of certiorari, if the decision of the Tax Court has been affirmed[.]" 26 U.S.C. § 7481(a)(2)(B). Therefore, the decision of the Tax Court in Weiss's case, which was affirmed by the D.C. Circuit, falls within Section 7481(a)(2)(B) and was "final" when the Supreme Court denied his petition. Weiss argues that Section 7481(a)(2)(B) does not apply to the tolling provision in Section 6330(e)(1), in part because the tolling provision does not refer to "Tax Court" decisions. (See Doc. No. 21 at 7-28.) However, as noted above, 26 C.F.R. § 301.6330-1(g) states that 6330(e)(1)'s "final determination" may denote the "exhaustion of any rights to appeals following judicial review." Here, the review process referenced in 6330(e)(1) must be construed to include a decision of the Tax Court because it is the court to which CDP determinations are appealed. See 26 U.S.C. § 6330(d). Therefore, Section 7481's definition of a Tax Court decision as "final" when certiorari is denied supports denial as the "final determination" of a CDP hearing.

Finally, this Court will address Weiss's contention that the attempt by the Government to collect costs awarded by the D.C. Circuit Court was a recognition that Weiss's appeal was "final" in that court. Costs are separate from the tax assessment being disputed in a case. See, e.g., McDonald v. McCarthy, 1990 WL 165940, at *2 (E.D. Pa. Oct. 22, 1990) (denying defendants' request to stay collection of judgment, fines, fees, and costs while their appeal was pending); Mann v. Washington Metro. Area Transit Auth., 185 F.Supp.3d 189, 194 (D.D.C. 2016) (denying a plaintiff's request to stay enforcement of the Bill of Costs pending the appeal, noting that a stay

pending appeal is an "intrusion into the ordinary process of administration and judicial review" (citing Nken v. Holder, 556 U.S. 418, 427 (2009)); Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 169 (1939) (holding a fee request amidst a pending petition for certiorari was separate from a final judgment on appeal because the "inquiry was a collateral one, having a distinct and independent character"). Accordingly, since the Government's suit was filed 64 days after certiorari was denied, it was commenced within the 90-day "failsafe" period. For this additional reason, the limitations period did not expire.

## V.     CONCLUSION

For all the foregoing reasons, the Government's Cross-Motion for Partial Summary Judgment (Doc. No. 19) will be granted and Defendant's Motion for Summary Judgment (Doc. No. 17) will be denied. An appropriate Order follows.