IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

                    Plaintiff,

    v.

CHARLES J. WEISS,

                    Defendant.

CIVIL ACTION
NO. 19-502

## OPINION

**Slomsky, J.**                                                **February 1, 2021**

## I.    INTRODUCTION

Before the Court is the Government's Motion for Summary Judgment.  (Doc. No. 45.) Seeking to collect Defendant Charles J. Weiss' unpaid income taxes plus interest for the years 1986 to 1991, the Government avers it is entitled to summary judgment in light of Defendant's sworn federal income tax returns and his stipulations to the amount of taxes owed.  Defendant does not contest the total amount of his income tax liabilities for the years 1986 to 1991.

For the reasons discussed _infra_, and viewing the facts in the light most favorable to Defendant as the nonmovant, the Government's Motion for Summary Judgment (Doc. No. 45) will be granted.

## II.    BACKGROUND

This case has a long history of litigation, which is summarized as follows:

Defendant Charles Weiss did not pay his income taxes for the years 1986 through 1991, and under 26 U.S.C. § 6502(a)(1), the Government had ten years to collect the taxes from the time it made an assessment.  It did so in 1994 and over the years the 10-year period was tolled due to Weiss filing for bankruptcy on several occasions.  Eventually, Weiss filed for a hearing on the assessment, which is also referred to as a collection due process ("CDP") hearing.  The parties agreed that 129 or 130 days remained on the statute of limitations from the time that Weiss

1

mailed in the form for this hearing.  The hearing was held, and his claims were rejected.  This decision was upheld by the United States Tax Court in August 2016. On November 23, 2016, Weiss appealed the decision of the Tax Court to the United States Court of Appeals for the District of Columbia Circuit.  On May 22, 2018, the D.C. Circuit affirmed the decision of the Tax Court.  On August 23, 2018, the D.C. Circuit issued its mandate.  On October 24, 2018, Weiss filed a petition for a writ of certiorari with the United States Supreme Court, seeking review of the D.C. Circuit's ruling.  On December 3, 2018, the petition for a writ of certiorari was denied.  On February 5, 2019—64 days after the Supreme Court denied the petition for a writ of certiorari—the Government brought the present action against Weiss to reduce to judgment his unpaid assessments plus statutory additions . . . .

(Doc. No. 37 at 2.)

As noted above, 26 U.S.C. § 6502(a) allows the Government to begin a proceeding to collect Defendant's unpaid income taxes within 10 years from the date the Government assessed Defendant's income tax liabilities.  The statute reads as follows:

> Where the assessment of any tax imposed by this title has been made within the period of limitation[1] properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
>
> > (1) within 10 years after the assessment of the tax, . . .
>
> If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

§ 6502(a).

In the Complaint timely filed on February 5, 2019, the Government pled that "[i]n accordance with Weiss' sworn federal income tax returns," the income tax assessments show Defendant "is indebted to the United States in the amount of $773,899.84 as of February 11, 2019, plus statutory additions to tax that will continue to accrue on the unpaid balance until paid in full."

---

[1]  "The amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . ." 26 U.S.C. § 6501(a).  Defendant filed his income tax returns for the years 1986 to 1991 in October of 1994.  (See Doc. No. 14 ¶¶ 12, 16, 20, 24, 28, 32.)  The Government therefore timely assessed Defendant's income tax liabilities in 1994.  (See Doc. No. 1 ¶ 5.)

(Doc. No. 1 ¶ 5, 9.)  On May 24, 2019, Defendant filed an Answer.  (Doc. No. 7.)  On September 18, 2019, the parties filed a Joint Stipulation.  (Doc. No. 14.)  Among other things, the parties stipulated to the assessments made on Defendant's income tax returns for the years 1986 to 1991. (See id. ¶¶ 12-35.)  The parties agreed that Defendant's income tax liabilities, exclusive of interest, are as follows: (1) $47,185 for 1986; (2) $47,856 for 1987; (3) $36,954 for 1988; (4) $50,460 for 1989; (5) $55,224 for 1990; and (6) $61,523 for 1991.  (See id. ¶¶ 13, 17, 21, 25, 29, 33.) Moreover, the Government attached to the Stipulation copies of the IRS account transcript for each tax year as further proof of each assessments' accuracy.  (See id. at 13-45.)

On November 13, 2020, the parties filed a second Joint Stipulation regarding Defendant's tax liabilities.  (Doc. No. 44.)  The parties stipulated that as of October 6, 2020, Defendant's federal income tax liabilities, inclusive of interest, are as follows: (1) $145,275 for 1986; (2) $132,672 for 1987; (3) $128,907 for 1988; (4) $131,246 for 1989; (5) $110,129 for 1990; and (6) $184,359 for 1991.  (See id. ¶ 1.)  They noted that Defendant "does not and will not challenge the amounts . . . though he may continue to dispute his obligation to pay such amounts."[2]  (Id. ¶ 2.)

On December 15, 2020, the Government filed the instant Motion for Summary Judgment. (Doc. No. 45.)  In the Motion, it argues that there are no genuine issues of material fact in this case regarding "the federal income tax assessments made against the defendant," and therefore it is entitled to judgment on those assessments—plus interest—which as of October 6, 2020 totals to

---

[2]   Throughout this litigation, Defendant has contested whether the Government filed this lawsuit within 10 years of assessing the taxes, in accordance with the 26 U.S.C. § 6502(a) statute of limitations.  (See Doc. Nos. 7, 17, 33.)  His argument on the limitations period is the only reason he disputes his obligation to pay his income tax liabilities plus interest.  (See Doc. Nos. 14, 44.)  The Court has already found Defendant's statute of limitation arguments to be without merit.  (See Doc. Nos. 31, 37.)  He is raising the issue for a third time in his Response in Opposition to the instant Motion for Summary Judgment (see Doc. No. 48), and once again it is considered infra.

$832,588.  (Id. at 1.)  "[I]n order to avoid summary judgment," the Government explains that Defendant "must come forward with credible evidence showing that a genuine issue of material fact remains as to the income tax assessments made against him, or that the United States is not entitled to a judgment as a matter of law."  (Doc. No. 45-1 at 3.)  It argues that Defendant cannot do so because "the income tax assessments made against him were based on his own sworn federal income tax returns," and he "stipulat[ed] to the current amount of the liabilities."  (Id.)

On January 12, 2021, Defendant filed a Response in Opposition to the Government's Motion.  (Doc. No. 48.)  In his Response, Defendant does not refute the total amount of income tax liabilities owed to the Government "though he may continue to dispute his obligation to pay such amounts."  (Doc. No. 48-2 at 3 ¶ 4.)

On January 22, 2021, the Government filed a Reply.  (Doc. No. 49.)  "In responding to the Government's motion," it notes that Defendant "does not dispute the dollar amounts of his tax liabilities . . . . He concedes there are no material disputed issues of fact."  (Id. at 1.)  "The parties stipulated to those dollar amounts, . . . and — as the parties agreed would happen because Weiss would not enter a consent judgment — the Government then moved for summary judgment."  (Id.)

## III.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).

A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  See Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  See Anderson, 477 U.S. at 250.

## IV.   ANALYSIS

Upon reviewing the pleadings, motions, and joint stipulations, it is evident there is no genuine dispute of material fact present in this case.  Therefore, under governing law, the Government is entitled to a judgment against Defendant for the unpaid income taxes plus interest for the years 1986 to 1991.

### A.   Summary Judgment Will Be Granted Because There Is No Genuine Dispute of Material Fact on the Tax Liabilities of Defendant

No genuine issues of material fact exist in this case because the parties have twice stipulated to all material facts.  "[F]actual stipulations are 'formal concessions . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Christian Legal Soc. Ch. of the U.C., Hastings Coll. of the Law v. Martinez, 561 U.S. 661, 677-78 (2010) (alteration in original) (citation omitted).  In other words, a joint stipulation to facts "admits that there is no dispute as to the facts[.]"  83 C.J.S. Stipulations § 86 (footnote omitted).

Here, the parties filed joint Stipulations on September 18, 2019 and November 13, 2020. (Doc. Nos. 14, 44.)  In the first Stipulation, the parties stipulated to the Government's assessments of Defendant's unpaid income tax liabilities, exclusive of interest, for the years 1986 to 1991.  (See Doc. No. 14 ¶¶ 13, 17, 21, 25, 29, 33.)  Each years' assessment is as follows: (1) $47,185 for 1986;

(2) $47,856 for 1987; (3) $36,954 for 1988; (4) $50,460 for 1989; (5) $55,224 for 1990; and (6) $61,523 for 1991.  (See id.)  The Government also attached to the Stipulation copies of the IRS account transcript for each tax year as further proof of each assessments' accuracy.  (See id. at 13-45.)

In the second Stipulation, the parties agreed that Defendant "is indebted to the United States for the following federal income tax liabilities, inclusive of interest, as of October 6, 2020: $145,275 for 1986[;] $132,672 for 1987[;] $128,907 for 1988[;] $131,246 for 1989[;] $110,129 for 1990[;] $184,359 for 1991[,]"[3] which totals to $832,588.  (Doc. No. 44 ¶ 1.)  The Stipulation subsequently states—and Defendant repeats in his Response in Opposition to the instant Motion—that he has reviewed the calculations and "does not and will not challenge the amounts set forth above[.]"  (Id. ¶ 2; Doc. No. 48-2 at 3 ¶ 4.)

These stipulations make clear that, when viewed in the light most favorable to Defendant, there is no genuine dispute of material fact as to the total amount of income tax liabilities owed by him.  Therefore, the Government's Motion for Summary Judgment (Doc. No. 45) will be granted. See Anderson, 477 U.S. at 250.  Pursuant to 26 U.S.C. § 6502(a), the Government is entitled to a judgment against Defendant for the unpaid income taxes plus interest for the years 1986 to 1991 until paid in full.

**B.      Defendant's Statute of Limitations Claim**

Despite the Court having ruled against Defendant on his statute of limitations argument in an Opinion and Order dated May 21, 2020, and in an Order dated August 20, 2020 (see Doc. Nos. 31, 37), he has once again raised the issue by directing the Court's attention to a U.S. Supreme

---

[3]      As further proof that the income tax assessments are undisputed, the Government attached to the instant Motion a Declaration of IRS Revenue Officer Perry Shumsky, who confirms that the assessment amounts are true and correct.  (See Doc. No. 45-3 at 3 ¶ 10.)

Court case that was not previously relied upon by him.  (See Doc. No. 48-3 at 3.)  The limitations

issue concerns whether a petition for a writ of certiorari to the U.S. Supreme Court constitutes an

"appeal" under 26 U.S.C. § 6330(e)(1), the statute which tolls the § 6502(a) ten-year statute of

limitations.  Section 6330(e)(1) reads as follows:

> [I]f a hearing is requested under subsection (a)(3)(B), the levy actions which are
> the subject of the requested hearing and the running of any period of limitations
> under section 6502 (relating to collection after assessment), section 6531 (relating
> to criminal prosecutions), or section 6532 (relating to other suits) shall be
> suspended for the period during which such hearing, and appeals therein, are
> pending.  In no event shall any such period expire before the 90th day after the day
> on which there is a final determination in such hearing.

§ 6330(e)(1) (emphasis added).

As stated in Section II, supra, the parties agree that, from the date Defendant mailed his

form requesting a Collection Due Process ("CDP") hearing, 129 to 130 days remained on the

statute of limitations for the Government to collect Defendant's unpaid income taxes by proceeding

in court.  (See Doc. No. 37 at 2.)  Fast forwarding to the time limits in question here, the D.C.

Circuit issued its mandate on May 22, 2018, and Defendant filed his petition for a writ of certiorari

in the U.S. Supreme Court on October 24, 2018.  (See id.)  On December 3, 2018, the petition was

denied, and on February 5, 2018—64 days after the petition was denied—the Government filed

the instant action against Defendant to reduce to judgment the unpaid assessments plus statutory

additions.  (See id.)

Defendant maintains that a petition for a writ of certiorari is not included in the term

"appeals therein" in § 6330(e)(1), and therefore the 129 to 130 days remaining on the statute of

limitations would have expired before the instant suit was filed.  The reasons why Defendant is

incorrect have been thoroughly discussed in the Court's May 21, 2020 Opinion and August 20,

2020 Order denying reconsideration.  (See Doc. Nos. 31, 37.)

Defendant's new request in his Response in Opposition to the Motion for Summary Judgment, in which he asks for a second time that the Court reconsider its ruling on the statute of limitation issues, is not being pursued appropriately and is untimely. "A request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1); see also Mangual v. DIA – Wesley Drive, Inc., No. 1:13-00071, 2015 WL 12914540, at *1 n.1 (M.D. Pa. Feb. 18, 2015) (citation omitted) ("A request for a court order . . . must be made through the filing of a motion . . . . Here, no motion for reconsideration has been filed by [plaintiff] . . . . On this basis alone, we are inclined to deny [plaintiff]'s request in his brief-in-support."). Moreover, Eastern District of Pennsylvania Local Rule of Civil Procedure 7.1(g) states that "[m]otions for reconsideration . . . shall be served and filed within fourteen (14) days after the entry of the order concerned[.]" U.S. Dist. Ct. Rules E.D. Pa., Civ Rule 7.1(g).[4] More than 14 days have elapsed since the Court denied Defendant's first Motion for Reconsideration. (See Doc. Nos. 37, 43.)

In any event, Defendant now brings to the Court's attention the U.S. Supreme Court decision, FEC v. NRA Political Victory Fund, 513 U.S. 88 (1994). (See Doc. No. 48-3 at 3.) He contends that FEC held, as a general proposition, that a petition for a writ of certiorari is not an appeal (see id. at 3, 6), but this is not the holding in FEC. In FEC, the Supreme Court addressed whether the Federal Election Commission ("FEC") could file a petition for writ of certiorari under 2 U.S.C. § 437d(a)(6)[5] on its own without obtaining the Solicitor General's approval, and ultimately determined that it could not. See FEC, 513 U.S. at 92, 98. The Court compared the

---

[4]   See also Red Roof Franchising LLC, Inc. v. AA Hosp. Northshore, LLC, 937 F. Supp. 2d 537, 543 (D.N.J. 2013) (finding that defendants' reconsideration request "commingle[d] . . . with their arguments in opposition to [plaintiff's] Motion" is untimely as it was filed 64 days after the court's order).

[5]   2 U.S.C. § 437d has been moved to 52 U.S.C. § 30107.

statutes affording the FEC independent litigating authority—§ 437d(a)(6) and 26 U.S.C. §§ 9010(d), 9040(d)—and concluded that "Congress intended to restrict the FEC's independent litigating authority" when it proceeds under § 437d(a)(6), reasoning that "Congress could have thought the Solicitor General would better represent the FEC's interests in cases involving our discretionary jurisdiction 'because the traditional specialization of that office has led it to be keenly attuned to this Court's practice with respect to the granting or denying of petitions for certiorari.'" Id. at 94 & n.2.

Thus, the Court's holding did not exclude certiorari from being part of the appeals process or an appeal. The Court merely found that the FEC did not have independent litigating authority to file petitions for certiorari under § 437d(a)(6) largely due to the "Solicitor General's traditional role in conducting and controlling all Supreme Court litigation on behalf of the United States and its agencies." Id. at 93. The Court did not hold that a petition for a writ of certiorari was not included in a phrase such as "appeals therein" as used in the context of 26 U.S.C. § 6330(e)(1).

Furthermore, this Court agrees with the Government's description that in FEC:

> Both the majority and dissent suggest that, outside the specialized context of that case, the *ordinary* meaning of appeal *does* include Supreme Court review, whether mandatory or discretionary. *See Fed Elec. Comm'n*, 513 U.S. at 93-94 (noting that the Black's Law Dictionary definition of "appeal" would carry considerable weight if not for the cognate provision governing FEC litigation authority); *id.* at 100 (Stevens, J., dissenting) (noting that the "far more natural reading" of "appeals" includes discretionary review in the Supreme Court).

(Doc. No. 49 at 2-3) (emphasis in original).

## V.   CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment (Doc. No. 45) will be granted. An appropriate Order follows.